## ISAAC N. TAGGART *v.* ALEXANDER PACKARD.

### *Contract. Pledge.*

A. for himself and B. contracted with R. for the use and occupation of R.'s premises, and at the same time executed and delivered a writing to R. by which A agreed to cut the hay on the premises and put it in the barn thereon, and that it should remain the property of R.; but if A should pay R. before the first day of October, then next, $12., then the hay was to become the property of A. *Held,* that the transaction was, as it was intended to be, only a pledge of the hay to R., as security for the rent of $12. to be redeemed by the payment of that sum on or before the first day of October, then next; that upon failure of A. and B. to so pay, R. had the right by proceeding in chancery to compel them to redeem the pledge or be foreclosed of all their rights therein; or to sell the property in the mode prescribed by law to raise the money, and until the one or the other process was perfected they had the right to redeem.

While the hay remained in said barn, said writing was assigned to the plaintiff with all of R.'s interest in the hay, after six dollars had been paid to R. by A., and after the first of October. *Held,* that the plaintiff is charged with notice of all that he might have learned upon inquiry in respect to the contract between the original parties; therefore the plaintiff acquired no greater right to the hay than R. had.

But the defendant B. having tendered the balance due on said contract, had a right to the hay, and was not a trespasser in peaceably removing it.

TRESPASS with a count in trover for a quantity of hay. Plea, not guilty, and trial by court by agreement of parties at the May Term, 1866, BARRETT, J., presiding, when, *pro forma*, judgment was rendered for the plaintiff,—to which the defendant excepted.

*Julius Converse* and *Warren C. French*, for the defendant.

*James J. Wilson*, for the plaintiff.

The opinion of the court was delivered by

PIERPOINT, Ch. J. It appears from the case that in 1863 the defendant and one Russell contracted with one Raymond, through his agent, French, for the use and occupation of certain premises owned by said Raymond. Russell made the contract with said French, for himself and the defendant. At the time of making the contract, Russell executed and delivered to said French the writing in question, by which he agreed to cut the hay on the meadow por-

tion of said premises, put it in good condition into the barn on said place, and that it should remain the property of said Raymond. But that if he (the said Russell) should pay the said Raymond on or before the 1st day of October, then next, the sum of $12., then the said hay was to become the property of said Russell. Neither said Russell nor the defendant paid the said $12. by the 1st of October, but on the 14th of October Russell paid French $6. towards it which French received without objection. On the 14th of November (the remaining $6. not having been paid) French sold the hay that Raymond was entitled to, to one Adams for $6., and assigned and delivered to him said written contract, Adams in the mean time having purchased of Russell his half of the hay as between him and the defendant. At this time Adams understood the precise relations as they existed between Raymond, Russell and the defendant. After this Adams transferred his interest in the hay to Taggart (the plaintiff) and assigned and delivered said writing to him. The effect of these several transfers was to place the plaintiff in the shoes of Raymond, and to vest in him the same right to the hay that Raymond would have had if he had retained his interest in it. In the early part of December, and after the transfer to the plaintiff, the defendant tendered to the plaintiff, the full sum due of the $12. and claimed half of the hay; the plaintiff refused to receive it, claiming the whole of the hay; thereupon the defendant took away one half of the hay, and it is for that act this suit is brought.

The question as to the construction and legal effect of the writing executed by Russell, has been much discussed in the argument; but, we think, that question was definitely settled by the county court. Parol evidence was then introduced bearing upon the question; by which party it was introduced does not appear; perhaps by both; no objection was made to its introduction by either party, and no objection was made, after its introduction, to its being considered by the court, hence no question arises upon it here. Upon this evidence, in connection with the writing, the county court have found that it was understood and intended by Russell, the defendant, and French, that said writing should create and give a lien, only by way of security, on the hay for the payment of the rent, and that Adams

Taggart *v.* Packard.

so understood it when he took the transfer from French. Upon these facts there can be no question that Adams took the transfer of the hay and the writing, subject to the rights of the defendant therein, whatever those rights may have been. It does not appear that at the time the plaintiff took the hay and the writing of Adams, he knew precisely what the contract in fact was between Russell, the defendant and Raymond. The hay was not in Adams' possession, it was still in the barn of Raymond, where Russell and the defendant had placed it. This the plaintiff knew. The hay was as. much in the possession of the defendant as of Adams. That Russell once had rights in respect to that hay, thus in Raymond's barn, the plaintiff knew. The paper that Adams transferred to him gave him information of that; this was sufficient to put him upon inquiry, and if he had inquired he would have ascertained what the rights of Russell and the defendant were, as they were joint. Having omitted to make inquiries he must now stand charged with a knowledge of all he would have learned on the subject if he had; hence the plaintiff acquired no greater right to the property than Raymond had at the time his agent, French, sold to Adams. The question then arises, what was the right of Raymond in this property at that time? Under the finding of the county court, we think, the transaction can be regarded only as a pledge of the hay to Raymond as security for the rent of $12., to be redeemed by the payment of that sum, on or before the first day of October, then next. The rent not having been paid by the first of October, Raymond had the right, by proceeding in chancery, to compel the defendant to redeem the pledge or be foreclosed of all his rights therein, or by a more summary process to sell the property in the mode prescribed by law to raise the money, and until the one or the other process is perfected the debtor has the right to redeem. The course to be pursued in the latter case is thus prescribed by Judge KENT: "But without any bill to redeem, the creditor, on a pledge of chattels, may sell at auction, on giving reasonable opportunity to the debtor to redeem, and appraising him of the time and place of sale." 4 Kent's Com. 139.

This principle is too well settled to require discussion, or further authority to sustain it. As Raymond or his agent, French, did not

pursue the course prescribed by law in disposing of the property Adams took it subject to the right of the defendant. Indeed this, we think, was all the parties intended. Adams paid French only the balance of the rent due, and took an assignment of the writing; evidently an absolute sale of the hay was not intended, but if it had been, we think, it would have made no difference with the defendant's rights. And, as we have already seen, the plaintiff acquired no greater right to the property than Adams had; he too took it subject to the right of the defendant to redeem it upon the payment of the balance of the rent due.

As the case shows that the defendant tendered to the plaintiff that amount before he took the hay, he clearly had the right to do so, and having taken it peaceably, was not a trespasser in so doing.

Judgment reversed and judgment for the defendant.